IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALLEN D. GORION,<br><br>Defendant. | CR. NO. 15-00519 JMS (02)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 180 AND ECF NO. 182 |

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 180 AND ECF NO. 182

### I. INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), pro se Defendant Allen D. Gorion ("Defendant") moves for immediate release from Federal Correctional Institute La Tuna ("FCI La Tuna"). ECF Nos. 180 & 182.[1] The court determines that Defendant has failed to exhaust his administrative remedies and, even if he had properly exhausted, Defendant has failed to show extraordinary and compelling reasons warranting release. Further, even if Defendant had shown extraordinary and compelling reasons warranting release, the court would deny his

---

[1] The court construes Defendant's initial Motion for Compassionate Release, ECF No. 180, and his "Amended Motion to the Pending Motion for Compassionate Release," ECF No. 182, together, as Defendant's "Motion for Compassionate Release."

motion based on the 18 U.S.C. § 3553(a) factors.  Thus, for the following reasons, the Defendant's Motion for Compassionate Release is DENIED.

## II.  BACKGROUND

Defendant, currently 38 years old, is incarcerated at FCI La Tuna with a projected release date of November 17, 2031.  *See* https://www.bop.gov/inmateloc/ (last visited March 23, 2022).

On April 20, 2016, a jury found Defendant guilty of two counts: (1) knowingly and intentionally conspiring to distribute and possess with intent to distribute 500 grams or more of methamphetamine; and (2) knowingly and intentionally attempting to possess with intent to distribute 500 grams or more of methamphetamine.  ECF No. 121 at PageID ## 689-90; *see also* ECF No. 16 at PageID ## 42-44.  On October 21, 2016, Defendant was sentenced to concurrent terms of 216 months incarceration and concurrent terms of five years supervised release.  ECF No. 152; *see also* ECF No. 153 at PageID ## 1085-86.  The Ninth Circuit affirmed Defendant's conviction and sentence on July 2, 2018.  *See United States v. Gorion*, 740 F. App'x 528, 532 (9th Cir. 2018) (mem.).

On December 20, 2021, Defendant submitted a request for compassionate release to FCI La Tuna's warden, ECF No. 180-1 at PageID # 2468, and that request was denied on January 21, 2022, ECF No. 184-2 at PageID # 2536.  On January 20, 2022, one day before receiving the warden's response,

Defendant filed an initial Motion for Compassionate Release. ECF No. 180.[2] In that initial Motion, Defendant requested court-appointed counsel and leave to "correct or amend" the initial Motion should his request for appointment of counsel be denied. *See id*. at PageID ## 2444, 2466. On January 26, 2022, the court denied Defendant's request for appointed counsel and granted Defendant's request for leave to "correct or amend" his initial Motion. ECF No. 181. On February 15, 2022, the court received Defendant's "Amended Motion to the Pending Motion for Compassionate Release." ECF No. 182. On February 22, 2022, the court received Defendant's "Addendum" to his Motion for Compassionate Release, which includes supplemental information in support of his motion. ECF No. 184. The government filed its Opposition on March 16, 2022. ECF No. 187.

The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

---

[2] A motion is deemed filed on the date an incarcerated defendant gave it to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1108-09 (9th Cir. 2009). Here, Defendant signed the Motion on January 20, 2022. ECF No. 180 at PageID # 2467. The court thus assumes for purposes of this Order that the Motion was filed on January 20, 2022, thirty days after his submission of his request to the warden.

## III.  DISCUSSION

### A.  Legal Standard

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Accordingly, the court may reduce Defendant's sentence if (1) Defendant has exhausted the required administrative remedies; (2) the court finds there are "extraordinary and compelling reasons" warranting a sentence reduction; and (3) the court considers the § 3553(a) factors, to the extent they are applicable, and determines that the reduction is warranted under the circumstances. *See United States v. Keller*, 2 F.4th 1278, 1283–84 (9th Cir. 2021).

4

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided defendants with the ability to file motions for compassionate release on their own behalf (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). The Ninth Circuit has therefore determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

**B.      Exhaustion of Administrative Remedies**

To satisfy the exhaustion requirement for compassionate release motions under § 3582(c)(1)(A), a defendant's request to the Bureau of Prisons ("BOP") must explain the basis for the relief sought and provide a proposed release plan. *See* 28 C.F.R. § 571.61(a)(1)-(2);[3] *see also United States v. Burdette*, 2020

---

[3] More specifically, § 571.61(a) requires that, "at a minimum," a defendant's request to the BOP include (1) "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration"; and (2) a proposed release plan detailing "where the inmate will reside, how the inmate will support himself," and, if health is a basis for the request, "information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment. 28 C.F.R. § 571.61(a)(1)-(2).

WL 6375535, at *2 (E.D. Mich. Oct. 30, 2020).  Stated differently, if the basis for compassionate release is not presented to the BOP, the BOP has no ability to address the request on its merits, meaning the prisoner's claim is not exhausted.  *See Burdette*, 2020 WL 6375535, at *2; *see also United States v. Mogavero*, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden.").  And if a proposed release plan is not proffered, an inmate's request for reduction in sentence is not considered "submitted" for purposes of § 3582(c)(1)(A).  *See* Bureau of Prisons, *Compassionate Release/ Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205g* 3 (2019), available at https://www.bop.gov/policy/progstat/ 5050_050_EN.pdf (last visited March 23, 2022); *see also, e.g.*, *United States v. Tafoya-Ramos*, 2020 WL 7425341, at *3 (E.D. Cal. Dec. 18, 2020) ("[A]dministrative requests for release must include '[p]roposed release plans [as required under 28 C.F.R. § 571.61(a)(2)].'").

        The exhaustion requirement contained in 18 U.S.C. § 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced when properly invoked." *Keller*, 2 F.4th at 1282.  That said, the exhaustion requirement should not be applied in an overly technical manner.  *See United States v. Knight*, 2020 WL 4059886, at *2 (M.D. N.C. July 20, 2020) ("The exhaustion requirement should

not be applied hyper-technically, and the request to the warden need not be identical in detail or specificity to the motion made in court."). Instead, recognizing that BOP inmates are generally not trained in the law, exhausting a stated basis for relief only requires that an inmate place the BOP on notice of the general basis for relief. *See, e.g.*, *United States v. Clutts*, 2020 WL 6531915, at *4 (N.D. Iowa Nov. 5, 2020) ("[I]t is sufficient for a defendant to alert the BOP of the general grounds they assert for relief so long as the BOP has the information necessary to investigate such grounds.").

      Here, the government argues that Defendant's request to FCI La Tuna's warden was "deficient in two ways" because Defendant: (1) "failed to give the warden notice of the particular asthma and smoking medical conditions" he now bases his Motion upon; and (2) "failed to provide the warden with a release plan" as required under 28 C.F.R. § 571.61(a)(2). ECF No. 187 at PageID # 2587. Although the court disagrees with the government's first argument, it agrees with the second.

      Defendant stated the following bases for compassionate release in the request he submitted to FCI La Tuna's warden: (1) the "COVID-19 outbreak"; (2) "more contagious variants" of the COVID-19 virus; (3) "ineffective vaccines"; and (4) his "at risk medical conditions." ECF No. 180-1 at PageID # 2468. The government argues that Defendant has not administratively exhausted his request

7

as to the particular medical conditions he cites in his Motion because his request refers to "at risk medical conditions" while his Motion specifies his asthma and history of smoking. *See* ECF No. 187 at PageID # 2584. The court disagrees.

To "properly . . . exhaust [under § 3582(c)(1)(A)], an inmate is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *United States v. Williams*, 987F.3d 700, 703 (7th Cir. 2021); *see also Keller*, 2 F.4th at 1283 (recognizing that exhaustion cannot be established based on circumstances different from those set forth in a request to a warden). Here, in the context of a request for release based on the COVID-19 pandemic, Defendant raised his "at risk medical conditions" to the warden, pointing the warden to Defendant's "medical file." ECF No. 180-1 at PageID # 2468. Defendant's asthma and history of smoking are reflected in Defendant's BOP medical records and are "similar" enough to the grounds raised in the instant Motion such that, if otherwise properly exhausted, Defendant's Motion can proceed. *Cf. United States v. Kanohokula*, ___ F. Supp. 3d ___, 2021 WL 5411211, at *3-4 (D. Haw. Nov. 18, 2021) (finding that, because defendant did not raise the COVID-19 pandemic—at all—in his request to the warden, and the government properly invoked the mandatory-claim processing rule relating to administrative exhaustion as to that issue, the court could not rule on defendant's motion regarding COVID-19).

Nevertheless, Defendant did not provide the warden with a proposed release plan as required under 28 C.F.R. § 571.61(a)(2). *See* ECF No. 180-1 at PageID # 2468. Although Defendant provided the court with a proposed release plan in his Motion, *see* ECF No. 182-3, Defendant's request to the warden does not reflect submission of a release plan and Defendant does not otherwise offer any evidence or assert that he complied with this requirement. Because the government properly invoked the mandatory claim-processing rule of administrative exhaustion, *see Keller*, 2 F.4th at 1282, the court finds that Defendant failed to exhaust his administrative remedies, justifying the denial of his Motion on this ground alone. *See, e.g.*, *United States v. Rossi*, 2022 WL 395001, at *2 (D. Nev. Feb. 9, 2022) (finding that defendant "failed to properly exhaust the administrative process before filing his motion because he did not include all the required information in his [request] to the warden, such as where he would live if released or how he would pay for any medical treatment," in compliance with 28 C.F.R. § 571.61); *United States v. Rivarola*, 2020 WL 5441272, at *2 (S.D. Fla. Sept. 9, 2020) (finding that a defendant's request to the warden "completely omitted" a proposed release plan, "and therefore was a procedurally improper request to the Warden and failed to initiate the exhaustion period"); *United States v. Marzon*, 2021 WL 4649799, at *2 (E.D. La. Oct. 7, 2021) ("Because [defendant's] request did not explain his reentry plans, he has failed to provide the

'minimum' information required for administrative requests, and therefore cannot be said to have exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).").

## C.   Extraordinary and Compelling Reasons Do Not Warrant Release

But even if Defendant had exhausted the administrative process, the court would deny his Motion because he fails to demonstrate that extraordinary and compelling reasons relating to either the COVID-19 pandemic or his particular medical conditions (or both).

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). In his Motion, Defendant argues that compassionate release is warranted on two bases: (1) the COVID-19 pandemic itself, including the elevated risk of illness related to variants of the COVID-19 virus and the "ineffective[ness]" of COVID-19 vaccines; and (2) the "at risk medical conditions" from which he suffers that he alleges elevate his risk for serious illness should he contract COVID-19 again. *See* ECF No. 180-1 at PageID # 2468. These arguments are unavailing.

The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the BOP's] statutory role, and its extensive and professional efforts to curtail the virus's spread.); *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020) (explaining that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence" (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020))).

Further, Defendant has not shown that the hardships he faces at FCI La Tuna differ significantly from those suffered by inmates incarcerated at any other BOP facility. At present, BOP reports that zero inmates and two staff members at FCI La Tuna[4] have "confirmed active cases" of COVID-19. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited March 23, 2022). Although the court recognizes that COVID-19 cases could rise again at FCI La Tuna, the institution is presently doing well. And as COVID-19 vaccinations continue to be administered, the threat of a COVID-19 outbreak will continue to decrease over time.[5]

---

[4] FCI La Tuna currently houses 736 inmates. *See* https://www.bop.gov/locations/institutions/lat (last visited March 23, 2022).

[5] As of March 23, 2022, FCI La Tuna has completed full inoculations of 1,270 inmates and 230 staff members. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last
(continued. . . )

Defendant argues that his condition of asthma and "history of smoking" elevate his risk of becoming seriously ill if he were to be infected with the COVID-19 virus or one of its variants. ECF No. 180 at PageID ## 2448, 2450; ECF No. 184 at PageID # 2532. The court addresses each condition in turn.

Chronic lung diseases—including "moderate to severe" asthma—"can make you more likely to get very sick from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 23, 2022). Although Defendant appears to have been diagnosed with—and is being treated for—asthma, it is not clear whether his condition is "moderate to severe." *See* ECF No. 180-7 at PageID ## 2494, 2496, 2500 & 2502 (indicating that Defendant has been "[a]sthmatic since age 7" and is prescribed an albuterol inhaler that should be used "as needed"); ECF No. 187-1 at PageID # 2599 ("[Defendant] notes [at a November 5, 2021 BOP medical encounter] that he rarely uses his albuterol inhaler."); *id*. at PageID ## 2600, 2603 (indicating that Defendant's asthma is "well controlled with albuterol" and that his inhaler prescription was renewed on November 5, 2021). Regardless, the court assumes for purposes of this Order that Defendant is at increased risk based on his status as an asthmatic.

---

visited March 23, 2022). And, as discussed further below, Defendant contracted, recovered from, and has been vaccinated against COVID-19. *See* ECF No. 180-5 at PageID # 2473; ECF No. 180-7 at PageID # 2498; ECF No. 184-3 at PageID # 2537.

And "[b]eing a current or former cigarette smoker can make you more likely to get very sick from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 23, 2022). Thus, Defendant's history as a smoker places him at increased risk should he contract COVID-19 again. *See* ECF No. 180-7 at PageID ## 2492, 2494 (indicating Defendant has a "Tobacco History" that includes having smoked half a pack of cigarettes daily for fourteen years).

Defendant argues that compassionate release is justified due to his "risk of severe illness or death [based on his asthma and history of smoking]" should he contract COVID-19 again. ECF No. 180 at PageID # 2448; *see also id.* at PageID # 2466 ("If the [COVID-19] variant[s] turn[] into another huge wave, the Defendant worries he won't make it to an intensive care bed in time."). But Defendant appears to be receiving medical treatment for his conditions while incarcerated. *See, e.g.*, ECF No. 180-7 at PageID ## 2502, 2504 (Defendant's medical records indicating various prescriptions issued in 2020 for diagnosed conditions, including asthma). Further, he has not demonstrated that the medical care he receives is any different from that experienced by other federally-incarcerated individuals, nor is there any evidence in the record suggesting that he is not receiving appropriate treatment for his medical conditions. *See, e.g.*, *United States v. DeMille*, 465 F. Supp. 3d 1144, 1149 (D. Or. 2020) ("Chronic conditions

13

that can be managed in prison are not a sufficient basis for compassionate release." (citation omitted)).

And most significantly, Defendant's medical records indicate that he has been vaccinated against COVID-19 while in BOP custody. *See* ECF No. 184 at PageID # 2529 ("Defendant had both [COVID-19] vaccination[] [doses] and the booster.");[6] *see also* ECF No. 184-3 at PageID # 2537 (indicating that, after initially refusing COVID-19 vaccination on March 31, 2021, Defendant received two doses of the Moderna COVID-19 vaccine: one on December 29, 2021 and the other on January 26, 2022). Further, approximately one year prior to his vaccination, in December 2020, Defendant contracted—and later recovered from—the COVID-19 virus. *See* ECF No. 180-5 at PageID # 2473 (indicating, in a November 2, 2021 BOP medical record, that Defendant is "COVID-19 RECOVERED"); ECF No. 180-7 at PageID # 2498; ECF No. 187-1 at PageID # 2606 (indicating that Defendant tested positive for COVID-19 on December 1, 2020 and listing his status as "Resolved" as of December 14, 2020). As a result, Defendant's risk of symptomatic infection is greatly diminished. *See, e.g., United States v. Hayes*, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts

---

[6] Although Defendant states that he received a COVID-19 booster vaccination, the medical records he submitted do not confirm that statement. *Compare* ECF No. 184 at PageID # 2529 ("Defendant had both [COVID-19] vaccinations and the booster."), *with* ECF No. 184-3 at PageID # 2537 (January 28, 2022 BOP Medical Record indicating Defendant has received two doses of the Moderna COVID-19 vaccine, but not a vaccine booster).

have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions."); *United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1066 (S.D. Cal. 2021) ("Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19.'" (quoting *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021))).

Further, current CDC reports state that the risk of infection remains "much lower" in vaccinated individuals and that vaccination makes illness less severe. *The Possibility of COVID-19 After Vaccination: Breakthrough Infections*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited March 23, 2022). As stated by the CDC,

> Research shows that the FDA-authorized vaccines offer protection against severe disease, hospitalization, and death against currently circulating variants in the United States. However, some people who are fully vaccinated will get COVID-19. . . . [But] the risk of infection, hospitalization, and death are all much lower in vaccinated compared to unvaccinated people.

*Id*.

Here, Defendant's COVID-19 vaccination status substantially mitigates the risks he faces. Given these facts, Defendant's claim that he is at risk for severe illness from a breakthrough case is speculative. *See* ECF No. 180 at

PageID ## 2448, 2466; *see also United States v. Beebe*, 2022 WL 779954, at *1 (9th Cir. Mar. 14, 2022) (mem.) (affirming district court order that "fully considered [a defendant's] arguments for release and reasonably rejected them because of the low rate of COVID-19 infection at the prison and because of the 'rare' risk of reinfection").

Thus, even if Defendant had properly exhausted his administrative remedies—which he did not—when considering all of the evidence in the record, Defendant's medical conditions and the threat of contracting COVID-19 (through the original virus or its variants) do not, separately or together, constitute extraordinary and compelling reasons justifying release.

### D.      Section 3553(a) Factors

Further, even if extraordinary and compelling factors warranted compassionate release—and they do not—the court would also examine the applicable § 3553(a) factors. But after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (stating that compassionate release is discretionary and may be refused after a consideration of the applicable § 3553(a) factors).

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the

defendant";[7] and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2). And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

As to the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), while Defendant was in the State's HOPE probation program, he repeatedly tested positive when administered drug tests. *See* Tr. at 67:19-68:2, ECF No. 173 at PageID ## 2421-22. And at sentencing, the court expressed "concern . . . about [Defendant's] assaultive and violent behavior" based on prior convictions for disorderly conduct and harassment. Tr. at 68:1-8, *id*. at PageID # 2422; *see also* Presentence Investigation Report ("PSR") ¶¶ 41-42, ECF No. 151 at PageID # 1060. Further, the court found that Defendant lied under oath at his trial for the underlying offense and, accordingly, applied an obstruction of justice

---

[7] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

enhancement at sentencing. Tr. at 67:2-15, ECF No. 173 at PageID # 2421 (stating that "there's no question" that Defendant lied under oath at trial).

And as for "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), a jury found Defendant guilty of a drug trafficking conspiracy involving a significant amount of methamphetamine—2,650 grams, or more than 5 pounds—that was over a 97 percent purity level. Tr. at 66:15-21, ECF No. 173 at PageID # 2420.

At sentencing, after considering several factors in mitigation, including Defendant's diagnosed Attention Deficit Hyperactivity Disorder, his compliance while out on pretrial bond, his negative drug tests after his arrest, and his capable parenting of his three children, the court imposed a 216-month sentence after determining that Defendant's 262-327 month guideline range was "very high," "too high for someone with [Defendant's] background." Tr. at 69:17-70:22, ECF No. 173 at PageID ## 2424-25. But even considering the factors in mitigation, the court imposed "a substantial sentence" "to reflect the seriousness of the offense," "promote respect for the law[,] and provide just punishment." Tr. at 71:4-7, 10, *id.* at PageID # 2425. The court also determined that "a substantial sentence is necessary" "to afford adequate deterrence" and to protect the public from further crimes of Defendant. Tr. at 71:8-11, *id*.

18

To date, Defendant has served approximately 71 months of his 216-month sentence. *See* PSR, ECF No. 135 at PageID # 826 (indicating that Defendant was arrested on June 18, 2015, released on bail on June 24, 2015, and remanded to custody following his jury trial conviction on April 20, 2016); *see also* ECF No. 180-2 at PageID # 2469 (indicating the same). And with a projected release date of November 17, 2031, he has more than nine and a half years of incarceration remaining. *See* https://www.bop. gov/inmateloc/ (last visited March 23, 2022).[8]

Although Defendant has participated in BOP programming, *see* ECF No. 180-5 at PageID ## 2472-74, has offered a release plan identifying post-incarceration residence with his parents on Oahu, *see* ECF No. 182-3 at PageID ## 2424-26, and has a supportive network of family and friends, *see* ECF Nos. 184-7 to 184-21, compassionate release is not justified when weighed alongside the other § 3553(a) factors.

Considering all of the § 3553(a) factors, including the history and characteristics of Defendant, the offense conduct, and the time remaining on

---

[8] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020).

Defendant's sentence, the court finds that reducing Defendant's sentence would severely undermine the goals of sentencing set forth in § 3553(a)(2).

## IV. **CONCLUSION**

In sum, the court finds that Defendant has not properly exhausted his administrative remedies, and, even if he had, Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release. And even if Defendant had properly exhausted *and* established that extraordinary and compelling reasons warrant compassionate release—which, to be clear, he did not—the court would deny the motion based on the relevant § 3553(a) factors. Accordingly, Defendant's Motion for Compassionate Release, ECF Nos. 180 & 182, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 23, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Gorion*, Cr. No. 15-00519 JMS (02), Order Denying Defendant's Motion for Compassionate Release, ECF No. 180 and ECF No.182