IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CRIM. NO. 15-00519 JMS-2 |
|---|---|
| Plaintiff, | ORDER DENYING DEFENDANT'S RENEWED PRO SE MOTION FOR COMPASSIONATE RELEASE, ECF NO. 198 |
| vs. | |
| ALLEN D. GORION, | |
| Defendant. | |

### ORDER DENYING DEFENDANT'S RENEWED PRO SE MOTION FOR COMPASSIONATE RELEASE, ECF NO. 198

### I. INTRODUCTION

Pro se Defendant Allen D. Gorion ("Defendant" or "Gorion") has filed a "Renewed Pro Se Motion for Compassionate Release Pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i)" ("Renewed Motion"). ECF No. 198. Defendant requests to be released based on his asthma and his history of smoking, which he asserted as grounds for compassionate release in a previous request ("Initial Motion").[1] Defendant also asserts that his anxiety and high body mass index ("BMI") increase the chance of contracting severe illness due to COVID-19

---

[1] On January 20, 2022, and February 15, 2022, Defendant filed two respective documents, ECF Nos. 180 and 182, which the court construed as a single motion for compassionate release. The court denied Defendant's request on March 23, 2022. ECF No. 188. The court has jurisdiction to consider Defendant's successive motions for compassionate release under 18 U.S.C. § 3582(c). *See United States v. Trujillo*, 713 F.3d 1003, 1007 (9th Cir. 2013).

and thus justify his release. The court finds that Defendant has failed to exhaust administrative remedies as to his anxiety condition. Even if Defendant had fully exhausted administrative procedures, he has failed to show extraordinary and compelling reasons warranting release. Moreover, the court, having carefully examined the applicable 18 U.S.C. § 3553(a) factors in denying Defendant's Initial Motion, finds these factors again weigh in favor of continued incarceration. Accordingly, and as discussed below, the Defendant's Renewed Motion, ECF No. 198, is DENIED.

## II. **BACKGROUND**

Defendant is 38 years old and incarcerated at Big Spring Federal Correctional Institution with a projected release date of November 17, 2030.[2] *See* Find an inmate, https://www.bop.gov/inmateloc/ (last visited January 6, 2023). The court and parties are familiar with Defendant's background, which is set forth in the court's March 23, 2022 Order denying Defendant's Initial Motion ("March 23, 2022 Order"). ECF No. 188. This Order thus provides only the facts and background necessary to address Defendant's Renewed Motion.

Dissatisfied with the court's decision on his Initial Motion, Defendant appealed the March 23, 2022 Order. *See* ECF No. 191. Defendant filed two motions in the Ninth Circuit to stay appellate proceedings to file a new motion for

---

[2] Defendant was formerly incarcerated at FCI La Tuna, with a release date of November 17, 2031. *See* ECF No. 188 at PageID.2609.

compassionate release in this court, both of which the Ninth Circuit denied. *See* ECF No. 197 at PageID.2714. The Ninth Circuit explained that Defendant may file a new motion in the District Court but acknowledged that Defendant's appeal addresses only the March 23, 2022 Order. *Id*.

On July 5, 2022, Defendant filed the Renewed Motion. ECF No. 198. Defendant admits that "rather than address them on appeal,"[3] he seeks to "correct the exhaustion issue" and cites numerous cases in which other inmates with asthma and a history of smoking received a "reduction" in their sentences. ECF No. 198 at PageID.2717, PageID.2721–22. Defendant also seeks to rectify what he perceives as the court ignoring his reply to the Government's Response to the Initial Motion. *See id*. at PageID.2718, PageID.2722. On August 1, 2022, the Government filed a Response to the Renewed Motion. ECF No. 202. Defendant did not file a reply despite the court giving him several opportunities to do so. *See* ECF Nos. 203, 204, 206. The court decides the Renewed Motion without a hearing pursuant to Local Rule 7.1(c).

---

[3] On August 31, 2022, the Ninth Circuit entered a default order against Gorion and ordered him to file an opening brief or a motion for relief from default by September 14, 2022, or else it would automatically dismiss his appeal for failure to prosecute. *United States v. Gorion*, No. 22-10108 (9th Cir. Aug. 31, 2022) (Dkt. 10). On October 11, 2022, the Ninth Circuit gave Gorion one final opportunity to file an opening brief by November 10, 2022. *Id*. at Dkt. 11. On November 2, 2022, because Dkt. 11 was returned as refused and unable to forward by FCI La Tuna, the Ninth Circuit forwarded its Dkt. 11 to Defendant at FCI Big Spring. *Id*. at Dkt. 12. On December 13, 2022, the Ninth Circuit dismissed Gorion's appeal for failure to prosecute. ECF No. 207.

## III. **DISCUSSION**

### A.     Legal Standard

"Ordinarily, 'a federal court may not modify a term of imprisonment once it has been imposed.'" *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) (quoting *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021), and 18 U.S.C. § 3582(c)). Congress created a limited exception for modifying the sentence of a federal inmate who files a motion for "compassionate release" satisfying the substantive and procedural requirements of 18 U.S.C. § 3582(c)(1)(A). *See Wright*, 46 F.4th at 944. Section 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
>
>     . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

"As compassionate release derogates from the principles of finality, it is a 'narrow' remedy . . . and the court's disposition of a compassionate release motion 'is discretionary, not mandatory[.]'" *Wright*, 46 F.4th at 944–45. And although the court must consider "extraordinary and compelling" reasons, the applicable policy statements by the Sentencing Commission, and § 3553(a) factors, it may deny compassionate release on any of these bases:

> First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. Second, the court must evaluate whether a reduction would be "consistent with *applicable* policy statements issued by the Sentencing Commission." Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case." Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.

*Id.* at 945 (internal citations and footnote omitted). *See also Keller*, 2 F.4th at 1284 ("[A]lthough a district court must perform [the] sequential analysis before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step.").

Although § 3582(c)(1)(A) requires a sentence reduction to be "consistent with applicable policy statements issued by the United States Sentencing Commission," that requirement does not apply to this case, as there is currently no policy statement from the Sentencing Commission that is "applicable"

to compassionate release motions filed by a defendant rather than by the Federal Bureau of Prisons ("BOP") Director. *See Wright*, 46 F.4th at 946. Specifically, the Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, that was promulgated before the FSA, provided criminal defendants the ability to file motions for compassionate release on their own behalf. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (per curiam). The Sentencing Commission has not amended the Guidelines post-FSA. *Id.* at 800 n.1. This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. *See id.* at 801–02. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* at 802.

**B.     Exhaustion of Administrative Remedies**

Defendant has failed to establish that he administratively exhausted his request for compassionate release based upon his anxiety condition.[4] To satisfy § 3582(c)(1)(A)'s exhaustion requirement, a defendant must submit a request to the BOP (often, the prison warden) that explains the basis for the relief sought and provides a proposed release plan. *See* 28 C.F.R. § 571.61(a)(1)–(2); *see also*

---

[4] The government does not dispute that Defendant has administratively exhausted his claim as to being overweight but does raise his failure to exhaust his request for compassionate release based on anxiety. *See* ECF No. 202 at PageID.2807.

*United States v. McLean*, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (per curiam); *United States v. Burdette*, 2020 WL 6375535, at *2 (E.D. Mich. Oct. 30, 2020). The exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced when properly invoked." *Keller*, 2 F.4th at 1282. In other words, if raised by the government in opposition to a motion for compassionate release, the exhaustion requirement must be enforced, but if the government does not raise the exhaustion requirement, it may be waived.

      First, the court determines that Defendant has exhausted his administrative remedies as to his "asthma – history of smoking – high BMI." *See* ECF No. 198-5 at PageID.2780 (requesting for the second time compassionate release on March 23, 2022). But as to the anxiety condition, the court agrees with the government that Defendant failed to raise his anxiety condition in his March 23, 2022 request to the warden, *id.*, and thus failed to exhaust his administrative remedy as to that condition. The court, thus, cannot address this ground for compassionate release. *See, e.g.*, *United States v. Kanohokula*, 572 F. Supp. 3d 895, 901 (D. Haw. 2021) (finding that, because defendant did not raise the COVID-19 pandemic in his request to the warden, and the government properly invoked the mandatory-claim processing rule relating to administrative exhaustion as to that issue, the court could not rule on defendant's motion regarding COVID-19). Further, while Defendant has not fully exhausted his administrative remedies

7

as to his anxiety, the court nonetheless would deny the Renewed Motion even if he had fully exhausted his administrative remedies on all grounds.

### C.   Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release. *See Wright*, 46 F.4th at 951; *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). He has failed to do so this second time. The court addresses each of Defendant's medical conditions (and, as stated above, the court addresses both the exhausted medical conditions and his unexhausted condition of asthma).

Just as in the Initial Motion, Defendant does not satisfy his present burden to show that his asthma condition and history of smoking are grounds for compassionate release. Defendant continues to receive prescription medication for his asthma condition. *See* ECF No. 202-1 at PageID.2818–19 (showing new medication orders for Mometasone Furoate and Fluticasone Propionate spray, both to treat asthma). And while those with chronic lung diseases—such as "moderate to severe" asthma—"can make you more likely to get very sick from COVID-19," *see* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 6, 2023), there is no indication that Defendant's asthma is "moderate to severe." Instead, it appears that Defendant's asthma is potentially triggered by exercise. *See* ECF No. 198-3 at PageID.2776. Defendant also was

told by his "unit team that he is camp eligible because he is able to obey BOP rules including no smoking . . . ." ECF No. 198 at PageID.2724.

Defendant has a BMI of 28.8, *see* ECF No. 198-3 at PageID.2777, which places him as "overweight," not obese.[5] The CDC advises that being obese increases the risk of severe illness from COVID-19 and that overweight individuals may also be at increased risk. *See* Obesity, Race/Ethnicity, and COVID-19, https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited January 6, 2023). The CDC also cites a 2020 study suggesting that "risks of hospitalization, intensive care unit admission, invasive mechanical ventilation, and death are higher with increasing BMI." *Id*. (footnote omitted). The CDC's advisory mentions a specific increased risk, however, only with respect to obese—as opposed to overweight—individuals: "Having obesity may triple the risk of hospitalization due to a COVID-19 infection"; "Obesity is linked to impaired immune function"; "Obesity decreases lung capacity and reserve and can make ventilation more difficult." *See id.* (footnotes omitted).

The court acknowledges Defendant's anxiety condition, noting that he takes Paroxetine, which is prescribed to treat, among other conditions, generalized anxiety disorder. *See* ECF No. 198-2; *see also* Paroxetine, https://

---

[5] "Obesity" is defined as a BMI that is 30 kg/m$^2$ or higher, but under 40 kg/m$^2$. "Overweight" is defined as a BMI that is 25 kg/m$^2$ or higher, but under 30 gm/m$^2$. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 6, 2023).

www.ncbi.nlm.nih.gov/books/NBK526022/ (last visited January 6, 2023). Anxiety, however, is not a listed condition that would increase the chance of contracting severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 6, 2023); Digital Shareables on Coping with COVID-19, https://www.nimh.nih.gov/get-involved/digital-shareables/shareable-resources-on-coping-with-covid-19 (last visited January 6, 2023).

      Defendant also raises general concerns that he is at serious risk should he contract COVID-19 again. Although the court does not minimize this legitimate concern, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

      Further, the CDC reports that vaccinated individuals, even those who experience infections more than once, are much less likely to experience severe symptoms than people who are unvaccinated:

> COVID-19 vaccines help protect against severe illness, hospitalization and death. COVID-19 vaccines also help protect against infection. People who are vaccinated may still get COVID-19. When people who have been vaccinated get COVID-19, they are much less likely to experience severe

> symptoms than people who are unvaccinated. . . . When people who are vaccinated get COVID-19 get a breakthrough infection, they are much less likely to experience severe symptoms than people who are unvaccinated.

*See* COVID-19 after Vaccination: Possible Breakthrough Infection, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited January 6, 2023). Accordingly, being fully vaccinated against COVID-19, a defendant's risk of symptomatic infection is greatly diminished, making it much more difficult for a defendant to demonstrate an "extraordinary and compelling" reason to justify release. *See, e.g.*, *United States v. Hayes*, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions."); *United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1066–67 (S.D. Cal. 2021) ("Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19'") (quoting *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021))).

Defendant contracted COVID-19 in December 2020 and recovered. *See* ECF No. 187-1 at PageID.2605–06. He has since received two Moderna vaccines but refused a third. *See id.* at PageID.2607. District courts have declined to find extraordinary and compelling circumstances justifying release when the vaccine is available but the inmate refuses it. *See, e.g.*, *United States v. Canzater*,

11

2022 WL 1602163, at *8 (D.N.J. May 20, 2022) (noting court cases denying compassionate relief that routinely taken into account a prisoner's refusal to be vaccinated); *United States v. Sweeney*, 2021 WL 3781871, at *4 (D. Idaho Aug. 24, 2021) ("It makes little sense for a prisoner to argue that he must be released because of the risk posed by COVID-19 while at the same time refusing to complete a readily available vaccine treatment that mitigates that risk almost entirely.  Indeed, doing so would likely encourage prisoners to remain unvaccinated.").

Given his vaccination status, Defendant's claims of asthma, history of smoking, anxiety, and high BMI do not rise to the level of extraordinary and compelling reasons for compassionate release.  "Substantial immunologic evidence and a growing body of epidemiologic evidence indicate that vaccination after infection significantly enhances protection and further reduces risk of reinfection, which lays the foundation for CDC recommendations."  *See* Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html (last visited January 6, 2023).  Thus, as to the health conditions Defendant raises in the Renewed Motion, his infection-recovery-vaccination status substantially mitigates the risks he faces, even with his present conditions.

The conditions at Big Spring FCI are likewise not as dire a picture as Defendant paints.  There are presently zero inmates and staff with confirmed active

cases of COVID.  *See* COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited January 6, 2023).  Accordingly, the court finds that Defendant's asthma condition, history of smoking, high BMI, and anxiety do not rise to the level of extraordinary and compelling reasons to justify compassionate release.

**D.     Section 3553(a) Factors**

In denying Defendant's Initial Motion, the court examined the applicable § 3553(a) factors[6] and found that reducing Defendant's sentence would severely undermine the goals of sentencing set forth in § 3553(a)(2).  ECF No. 188 at PageID.2623–27.  Nothing has changed—the court affirms its view from the March 23, 2022 Order that "[c]onsidering all of the § 3553(a) factors, including the history and characteristics of Defendant, the offense conduct, and the time remaining on Defendant's sentence, the court finds that reducing Defendant's sentence would severely undermine the goals of sentencing set forth in § 3553(a)(2)."  ECF No. 188 at PageID.2626–27.  The court incorporates that

---

[6] The 18 U.S.C. § 3553(a) factors include, among others:

> (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable sentence guidelines; and (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants.

*Wright*, 46 F.4th at 945 n.4 (citing 18 U.S.C. § 3553(a); *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020)).

finding here and concludes that the sentencing factors do not weigh in favor of Defendant's release and denies his Renewed Motion on this ground alone.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's Renewed Pro Se Motion for Compassionate Release, ECF No. 198, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 6, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Gorion*, Cr. No. 15-00519 JMS-2, Order Denying Defendant's Renewed Pro Se Motion for Compassionate Release, ECF No. 198